## Philadelphia Veneer & Lumber Company v. Garrison.

(Decided October 16, 1914.)

### Appeal from Bell Circuit Court.

1. Bill of Particulars—When Party Required to Furnish—Practice.— Ordinarily a bill of particulars is appropriate where the information sought, if otherwise proper for a bill of particulars, is peculiarly within the knowledge of the party filing the pleading. But as a general rule a party will not be required to furnish informa-

tion which is equally or peculiarly within the knowledge of the party demanding the particulars, as where it appears from the nature of the pleadings and from the facts shown upon the application for a bill of particulars that the party demanding it has presumably a better knowledge of the matters than his adversary.

2. Assignment—Equitable Assignment.—Any order, writing or act which makes an appropriation of a debt or fund amounts to an equitable assignment thereof.

3. Assignment.—Where the assignment is of an entire claim the consent of the debtor is not required.

4. Actions—Transfer of Ordinary Action to Equity.—Although the defendant failed to move to transfer an ordinary action to the equity docket at the time he filed his answer as is required by Sub-section 2 of Section 10 of the Civil Code, nevertheless, as the case was peculiarly one of equitable cognizance and justice could not reasonably be had in a jury trial, it should have been transferred to the equity docket before trial, as provided by Sub-section 4 of Section 10 of the Civil Code of Practice.

5. Contracts—Logs and Logging—Damages.—Where a plaintiff contracted to cut and deliver logs at $10.00 per thousand feet, and failed to complete his contract, and subsequently made a new contract to finish the work at $12.00 per thousand feet, and sued the owner of the logs for a balance due under the first contract, the defendant was entitled to a credit of $2.00 per thousand feet upon his counter-claim as damages for the breach of the first contract.

J. C. JONES and D. K. RAWLINGS for appellant.

JAMES S. GILBERT and W. R. LAY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is an action at law filed by the appellee, Wiley Garrison, against the Philadelphia Veneer & Lumber Co., a Pennsylvania corporation, to recover the balances due under certain logging contracts. A somewhat detailed statement of those contracts, in their chronological order, is necessary to fully understand the case.

(a) Appellant owns a boundary of land and the timber trees standing thereon, situated on the waters of Little Clear Creek near Carlsbad Station in Bell County, Kentucky; it also operates a saw mill at Knoxville, Tennessee. For the purpose of having the trees cut down and sawed into logs and loaded upon cars at Carlsbad Station, appellant entered into a written contract on May 8, 1907, with Z. B. Garrison, whereby Garrison agreed to cut and deliver the poplar timber, upon cars at Carlsbad Station, for $10.00 per thousand feet. The oak, chestnut, and other timber was to be delivered at

two designated saw mills in the neighborhood, and for that service the company agreed to pay $4.00 per thousand feet.

Garrison further agreed to complete the work within two years, and that 20 per cent of the contract price should be retained by the company as a forfeit "until the completion of the job," it being further "distinctly understood and agreed that if the said Garrison should fail to complete his contract the said 20 per cent retained to be forfeited." Garrison worked under the contract until some time in February, 1909, when, according to appellant, Garrison agreed to cancel the hardwood part of the contract upon the appellant paying Garrison the $2.00 per thousand feet which had been retained on all the hardwood timber gotten out by him to that date, and extending for one year the time for getting out the poplar timber. At that time Garrison had earned $3,409.87 in getting out hardwood timber, the retained portion thereof being $681.95. This last named amount was paid to him on February 26, 1909.

(b)   During the spring and summer months of 1909, Z. B. Garrison did but little work, and failed to carry out the contract of May 8, 1907. In August, 1909, he applied to Yost, the agent of appellant, to know if appellant would consider Garrison taking Granville Garrison in as a partner on the work he was doing. The company consented to the arrangement, but Granville Garrison would not agree to work under the contract of May 8, 1907; and, in order to induce Granville Garrison to undertake the work, Z. B. Garrison agreed to the cancellation of the contract of May 8, 1907, and to the making of a new contract on August 19, 1909, between the company as the party of the first part and Z. B. Garrison and Granville Garrison of the other part. Garrison's retained money on poplar logs then amounted to $283.08.

Under this new contract the Garrisons agreed to cut and deliver on board the cars at Carlsbad Station all the poplar trees of a specified description on appellant's said land for $10.00 per thousand feet. Of the contract price, 50 cents per thousand was to be paid to appellant for the use of its tramway; $4.50 thereof was to be paid when the logs were delivered at the end of the tramroad; $3.00 per thousand to be paid when the logs were measured and loaded on the cars and ready for shipment; and the remaining $2.00 of the contract price was to be paid when the Garrisons had completed their

work; and, in case they should fail to complete their work according to the terms of the contract, "the said $2.00 on each one thousand feet of said logs should be forfeited to and kept by the party of the first part." Said contract of August 19, 1909, contained this final clause:

"In consideration of this contract, the party of the first part and Z. B. Garrison, of the second part, do hereby agree and declare that the written contract between them of date May 8, 1907, touching logs to be cut on the aforesaid land, and all subsequent written or parol modifications thereof, are no longer of any binding force, but are wholly merged in or superseded by this contract."

In the spring of 1910, Z. B. Garrison, without consulting appellant, sold out his interest in the contract to Granville Garrison, who, in about July, 1910, abandoned the work and refused to further carry out his contract, although he was urged to do so by the appellant; and upon his failure to continue the work, appellant made other arrangements for the delivery of the logs called for by the contracts of May 8, 1907, and August 19, 1909.

(c) Shortly after the abandonment of the contract of August 19, 1909, the appellant made a verbal contract in the month of September, 1910, with the appellee Wiley Garrison, Z. B. Garrison, and J. H. Wyatt, by which the three named parties were to complete the delivery of certain logs found within a certain boundary which Granville Garrison had failed to deliver while working under the contract of August 19, 1909. Under this verbal contract appellee claimed $72.56 was due him; and as the appellant expressly conceded this claim to be correct, nothing further need be said concerning it.

(d) The work which originally had been undertaken by the Garrisons under the contracts of May 8, 1907, and August 19, 1909, remaining unfinished, and appellant being desirous of completing it, it made another contract with the appellees Wiley Garrison and Z. B. Garrison on September 30, 1910, whereby they were to deliver, on the cars at Carlsbad Station, all the poplar timber and logs which Granville Garrison had abandoned and left in the woods. For this they were to get an increased price of $12.00 per thousand feet, $2.00 more than the original contract price, and payable as follows: $5.00

per thousand feet when the logs were delivered at the end of the tram-way; $5.00 per thousand feet when the logs were received at Knoxville; and the remaining $2.00 per thousand when the entire work was completed.

It is agreed by the parties that under this contract the Garrisons delivered 624 logs, aggregating 148,340 feet, at the end of the tram-way; but appellant stoutly denies that all of the 624 logs were ever received at Knoxville, and insists that only 605 logs, aggregating 117,531 feet, were ever received at Knoxville. The shortage of 19 logs is not accounted for. This transaction is made the basis of the first paragraph of the petition, wherein appellee sued for the balance of $129.79 alleged to have been retained on 148,340 feet of logs; and in this paragraph appellee further sued to recover $341.22 alleged to be due him as the second payment of $5.00 per thousand feet on 64,244 feet of logs which they claimed had been delivered at Knoxville, but not paid for.

In its answer appellant traversed these two claims, and not only alleged that only 117,531 feet of logs had been delivered at Knoxville under the contract for which it had fully paid , but that, in order to have the remainder of the logs delivered according to the contract, it had been compelled to go to an additional expense and sustained losses, aggregating $700.00, which it asserted as a counter-claim against the Garrisons.

Eliminating, therefore, from further consideration, appellee's claim for $72.56 asserted in the second paragraph of the petition, which appellant concedes to be correct, we have remaining for consideration the first and third paragraphs of the petition; the first asserting the claim of $129.79, the unpaid balance retained on 148,340 feet of logs claimed to have been delivered at Knoxville under the contract of September 30, 1910; and the further sum of $341.22, being the second payment of $5.00 per thousand on 68,244 feet of lumber claimed to have been delivered at Knoxville under the same contract; and the third paragraph of the petition, in which appellee claimed $283.08 as the retained portion of his money earned under the contract of May 8, 1907.

Wiley Garrison sued partly in his own right and also as assignee of Z. B. Garrison, joining Z. B. Garrison as plaintiff, under the following order, or assignment:

"Pineville, Ky., Oct. 19, 1911.

"Philadelphia Veneer & Lumber Co.

"Please pay Wiley Garrison what money is coming to me; also the retain; pay everything that is coming to me, over to Wiley Garrison.

his<br>
Z. B. x GARRISON,<br>
mark.

"Witness: C. B. BIRD."

Upon the presentation of the assignment to appellant it wrote Z. B. Garrison, on Oct. 21, 1911, informing him that the assignment had been presented, and asking him to advise appellant as to its correctness. Appellant made no objection to accepting the order; it only wanted to be assured of its genuineness.

The jury returned a verdict for the four amounts claimed, aggregating $826.65; and from a judgment for appellee upon that verdict, and also dismissing its counter-claim, the defendant prosecutes this appeal.

For grounds of reversal it is insisted; (1) that the petition did not state a cause of action, in that it did not sufficiently declare the terms of either of the contracts sued on, or set out in detail the various debits and credits of the accounts; (2) that the trial court erred in overruling appellant's motion to require the plaintiff to file an itemized account of his claim under each contract; (3) that no action at law can be maintained on the order of assignment sued on, in the absence of an allegation of acceptance; (4) that since the accounts at issue related to complicated accounts, the trial court erred in overruling appellant's motion to transfer the case to the equity docket; and (5) there being no ambiguity in the contract of August 19, 1900, it was the province of the court, and not of the jury, to determine its meaning when read in connection with the contract of May 8, 1907, and that plaintiff was, by reason of the contract of August 19, 1909, as a matter of law, not entitled to recover anything under the contract of May 8, 1907.

(1) While the petition is loosely and inartificially drawn, and the plaintiff might, with good reason, have been required to make it more definite and certain, we are of opinion it was sufficient.

(2) The appellee Z. B. Garrison could neither read nor write, and made no attempt to keep his logging ac-

counts; he relied wholly upon appellant to keep the accounts between them.

These facts bring the case within the general rule announced in 31 Cyc., 579, as follows:

"Ordinarily, a bill of particulars is appropriate where the information sought, if otherwise proper for a bill of particulars, is peculiarly within the knowledge of the party filing the pleading. But as a general rule a party will not be required to furnish information which is equally or peculiarly within the knowledge of the party demanding the particulars, as where it appears from the nature of the pleadings and from the facts shown upon the application for a bill of particulars that the party demanding it has presumably a better knowledge of the matters than his adversary. But even though the adverse party has full knowledge of the acts or transactions, a pleader whose allegations are very general may be required to furnish a bill of particulars in order that the opposite party may know upon what specific demand or defense to prepare his pleadings."

The petition demanded specific sums; and, as appellant knew the items going to make up those sums much better than appellee, the practice satisfied the rule above announced.

(3) Counsel for appellant emphasizes the fact that this being an action at law, and not in equity, there must have been an acceptance of the assignment before the action at law could be maintained; and further that there was no equitable assignment because the proof shows, according to its contention, that the order was really given as a pledge and only for the purpose of securing to Wiley Garrison $117.00 which Z. B. Garrison owed him. The writing of October 19, 1911, is, however, absolute upon its face and covered everything the company owed Z. B. Garrison. In 4 Cyc., 45 it is said:

"Any order, writing or act which makes an appropriation of a debt or fund amounts to an equitable assignment."

In Bispham's Equity, Section 167, the requisites of an equitable assignment are stated as follows:

"The difference between an order which will and one which will not operate as an assignment, appears to be this: If the order is such as to create a mere agency in the party to whom it is given to transfer the *chose* on behalf of the principal, then, like every other power of attorney, it will be revocable at pleasure, and can

confer no title upon the third party until the transfer is actually made. But where the order purports to pass a present interest in the *chose* to an alleged transferee, then, no matter what form the transaction may assume, it will be treated in equity as a valid assignment."

Under the rule thus announced the order of October 19, 1911, which passed all of Z. B. Garrison's interest in the debt was a valid assignment.

Furthermore, an acceptance of the order by the debtor was not necessary to its validity. In 2 R. C. L. 624 we find the rule stated as follows:

"Since the effect of the assignment of a part of a debt is to change materially the situation of the debtor by making him subject to the demands of two persons instead of one, it is generally held that his consent to such an assignment is essential to the creation of an obligation on his part to the assignee.

"But where the assignment is of the entire claim, the consent of the debtor is not required. If the rule were otherwise it would be a practical denial of the assignability of choses in action, because the right to assign would depend entirely on the will of the debtor."

And the fact that this equitable assignment was set up in an action at law, instead of in an equitable action, will not be permitted to prejudice the merits of the case. At most it was cause for transferring the case to the equity docket.

(4) Sub-sections 2, 3 and 4 of Section 10 of the Civil Code of Practice read as follows:

"2. The defendant by motion made when or before he answers, may have an ordinary action transferred to the equity docket, if, according to the provisions of Section 6, it should have been an equitable action.

"3. The court may, without motion, order the transfer of an action from one docket to another if either party be entitled to such transfer; or may try the action, or render judgment therein by default, unless a party entitled to a transfer move therefor.

"4. The court may, in its discretion, on motion of either party, or without motion, order the transfer of an action from the ordinary to the equity docket, or from a court of purely common law to a court of purely equity jurisdiction, whenever the court before which the action is pending shall be of the opinion that such transfer is necessary because of the peculiar questions involved, or because the case involves accounts so complicated or

such great detail of facts as to render it impracticable for a jury to intelligently try the case.''

Appellant did not make a motion to transfer the case to the equity docket when it filed its answer, as is required by Section 2, *supra;* on the contrary, its motion to transfer was not made until after the day on which the case had been set for trial, and while the parties were waiting for the trial. But if the case was peculiarly one of equitable cognizance, and justice could not reasonably be had in a jury trial, the case should have been transferred at any time, before trial, even without a motion to that end. Sub-section 4, *supra,* expressly so provides; it was drawn to cover cases of the character now before us, where the remedy at law is so impracticable that it cannot, from the very nature of the case, afford full justice. See Garvey v. Garvey, 156 Ky., 667, and the authorities there cited.

In the case at bar the suit was upon at least three logging contracts, each involving numerous items of charge and credit, extending over a period of three or four years, and into large amounts. With the pleadings and proof before us, and after constant recurrence thereto, we have had no little difficulty in arriving at a clear understanding of the several contracts sued on, and their relation to each other.

We are of opinion the case should have been transferred to the equity docket for trial, and that the chancellor erred in failing to do so.

(5) Furthermore, the trial court erred in failing to recognize appellant's contract rights. Appellees made three contracts of May 8, 1907, August 19, 1909, and September 30, 1910, and failed to fully carry out any of them. The last contract, at an increased cost of $2.00 per thousand feet, was made necessary by reason of appellees' failure to carry out the two previous contracts. The circuit judge should peremptorily have instructed the jury to find for appellant upon its counter-claim the excess cost of $2.00 per thousand feet upon timber cut and delivered under the last contract.

The other items of counter-claim were open to proof as in ordinary contested claims.

For the reasons indicated the judgment is reversed, and the case remanded, with instructions to transfer it to the equity docket and refer it to a commissioner for the purpose of settling the accounts between the parties.