### Salyers, et al. v. Golden.

(Decided April 30, 1926.)

### Appeal from Boyd Circuit Court.

1. Corporations—Furnishing of Money for Corporation by Stockholder, Secured by Notes of Other Stockholders, to be Paid Out of Profits of Corporation, Created no Liability on Part of Corpora-

tion, and Payment of Notes was Not Assumed by Assumption of Corporate Obligations.—Contract between stockholders, stating that one of them furnished money for corporation, secured by notes of others, which were to be paid first out of profits of corporation, created no liability against corporation, but was a voluntary contribution, and hence payment of stockholders' notes was not assumed by contract to assume obligations of corporation.

2.  Money Paid.—Volunteer, by paying out money for another, cannot create debt in his favor against person for whom he made payment.

MARTIN & SMITH for appellants.

PRICHARD & MALIN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In the summer of 1922 the appellant, Frank P. Salyers, and one N. C. Williams, were partners in a contracting business in Ashland, Kentucky. They sold a third interest in this firm to the appellee, Pete Golden. Thereafter, but just when does not appear, these three men incorporated this partnership and each took $5,000.00 worth of stock, which was paid for by the equipment of the partnership transferred to the company. In August of that year the company, which was styled "the Ashland Contracting Company," secured a contract from the Dempster Construction Company to do certain grading work as a subcontractor of that concern on a state highway project in Johnson county. To carry out this contract, it was necessary for the Ashland Contracting Company to buy a steam shovel and certain other equipment, and it had no funds to do so. The three men endeavored to borrow the needed money from a bank in Ashland and it finally agreed to lend $5,000.00 to the appellee, Golden, provided he executed to it his individual note secured by a mortgage on his home. This Golden did, and it is agreed that the whole $5,000.00 was used for the benefit of the Ashland Contracting Company. When Golden borrowed this money, the appellant and Williams each executed to him their respective notes for $1,666.66 secured by a mortgage on certain property each of them owned, and at the same time the three entered into a contract to be presently noted. Golden put these mortgages to record. In November, 1922, Salyers and his wife sold the property he had thus mortgaged to Golden to his co-appellant, Cordelia Bond, who

took the same without actual notice of Golden's mortgage, but subject of course to the same.

On the 6th day of January, 1923, the appellant Salyers sold to Williams and the appellee, Golden, his interest in the Ashland Contracting Company and the three parties entered into a contract evidencing such transaction, the parts of which pertinent to this litigation are, that Williams and Golden agreed "to assume and to pay any liability of said second party (Salyers), which he has previously entered into in behalf of the said Ashland Contracting Company by contract or by signing any instrument of writing as surety for said company, and to save the said second party harmless from any such liability whatsoever; to save said second party harmless from any indebtedness or liability of the Ashland Contracting Company." Thereafter Williams sold his interest in the company to Golden. It was not long after this when the company, which had been on the financial rocks almost from the beginning, went into bankruptcy. Just before it did so, however, Golden took $2,000.00 of its funds and paid the same on the note of $5,000.00 he had executed to the bank, leaving a balance due thereon of $3,000.00.

In the meantime Mrs. Bond had discovered the lien in favor of Golden on the property she had bought from Salyers, and thereupon she and Salyers brought this suit against Golden to have the mortgage cancelled on the theory that under those parts of the contract of January 6, 1923, above quoted, Golden had assumed the payment of the indebtedness secured by such mortgage, and so, being both creditor and debtor, the debt and the mortgage which secured it were extinguished. Golden by answer traversed appellants' petition and by counterclaim asked that his lien be enforced for the balance due of $1,000.00. The court dismissed appellants' petition and granted Golden the relief he sought under his counterclaim, and from such judgment this appeal is prosecuted.

The appellants plant themselves squarely on the contract of January 6th and in doing so insist that the loan of $5,000.00 made to Golden by the bank was in truth the obligation of the Ashland Contracting Company and its debt, and that being such it was assumed by Golden under the quoted clauses of that contract. *Per contra,* Golden contends that this loan was not the debt of the Ashland Contracting Company but a private arrange-

ment entered into by Salyers, Williams and himself, by which they individually raised the needed money and paid it out for the company. The lower court took Golden's view of the matter and in doing so we think the court was correct. As stated, at the time this money was borrowed and the various mortgages executed, these three men entered into a contract, which, after making certain recitals to the effect that the company had certain contracts to carry out which it was necessary to raise money for the purpose of buying material, went on to say: "The said Pete Golden has furnished and paid for the said corporation the sum of $5,000.00, two-thirds of which, or $1,666.66 each, is the obligation of said N. C. Williams and F. P. Salyers, and which several amounts they acknowledge that they each justly owe to said Pete Golden." Although the company was not a party to this agreement, the contract provided that Golden should have a lien on all the assets of the company to secure him in this debt. It further provided that any profits and earnings of the company should first be applied to the payment of the two notes of $1,666.66 until the same were paid, and then the profits were to be divided among the three men equally. The contract closed with the statement that its purpose was to secure said Golden in the repayment of the money advanced by him for Williams and Salyers.

It is evident that this transaction created no debt or liability in favor of anybody as against the Ashland Contracting Company. The company never borrowed this money. It executed no note or other obligation for the same. It made no contract with reference to it and never agreed to reimburse any of these three men for the funds they had raised and paid out for it. It was a voluntary contribution on their part to the success of the company, and they never regarded it as a debt or obligation of the company. That this is so is clear from the way they provided how their notes were to be paid. They did not say that these notes should be paid by the company as it paid its other obligations. They did not say that the notes should be paid by the company at all. They provided, on the contrary, that all the profits of the company, which really means dividends, should be paid to Golden until these notes were discharged, and thus they (Salyers and Williams) would pay Golden the notes they owned Golden with their dividends; in other words, their funds. It is true that from a literal reading

of this contract, Golden's one-third of the dividends would also be so used, but conceding the clause requires this literal reading, yet it was not the property of the company which was to discharge these notes, but the profit or dividends which belonged to its stockholders and which they could use as they saw fit, and such use would fasten no liability or obligation upon the company. A volunteer, by paying out money for another, cannot thereby create a debt in his favor against such person for whom he has made such payment. Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844. Such is the case here. These men, as volunteers, simply paid out money for the benefit of the company they were interested in. The company did not ask them to do this and never agreed to repay them. It is clear no obligation or liability arose against it.

We may also add that when Salyers sold out his interest in the concern to Golden and Williams he never asked for his note back, although he had then sold the mortgaged property to his co-appellant, Mrs. Bond, and it is by no means clear it was even mentioned during the negotiations which led up to that deal.

Having concluded that the note and mortgage sought to be cancelled by this suit were never the debt, obligation or liability of the Ashland Contracting Company, it follows that Golden did not assume its payment under the quoted clauses of the contract of January 6th, and as this was the only ground on which Salyers and Mrs. Bond sought the cancellation of Salyers' mortgage to Golden, the lower court committed no error in refusing to grant them the relief they sought.

Judgment affirmed.