## Dejarnett et al. v. Tutt.

(Decided June 18, 1929.)

100

E. C. HYDEN for appellants.

LEEBERN ALLEN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS—Reversing.

W. S. Tutt sued D. H. Fulks, N. L. Dejarnett, and Roberta Bair Dejarnett to recover $491.90, which he alleged to be due him for material and services rendered in drilling an oil well, and on an assigned account which he had purchased from one George Cox. He also sought to cancel the conveyance of an oil lease from Dr. G. M. Center to Roberta Bair (now Roberta Bair Dejarnett) dated the 27th of July, 1927, and to have same declared the property of N. L. Dejarnett and subjected to his debt. Issues were raised, proof taken, and on final hearing the chancellor granted the relief sought in plaintiff's petition. The defendants Roberta and N. L. Dejarnett appeal.

It appears from the evidence that both Roberta Bair and D. H. Fulks were formerly residents of Wilkes-Barre, Pa. N. L. Dejarnett was a resident of Little Rock, Ark. Prior to July 27, 1926, Dejarnett and Fulks, as partners, had operated a drilling rig in Wolfe county, Kentucky; Fulks having active control of the business. Mrs. Roberta Bair visited Wolfe county during that period and inspected well No. 1 which had been brought in on the farm of Dr. G. M. Center. Dejarnett was married, and his wife was suing him for divorce in Little Rock, but no intimacy is shown to have existed between

him and Mrs. Bair at that time. Subsequent to Mrs. Bair's visit, Dr. Center offered to sell his interest in well No. 1 to Dejarnett, who offered to buy it on time, but claimed to be unable to buy for cash. Center was unwilling to sell on time, and Dejarnett wrote Mrs. Bair about it. She communicated with Fulks, and authorized him to buy the well for her, which he did, paying a consideration therefor of $700. She thereupon sent Fulks her check, drawn on a bank in Wilkes-Barre, for $800. Fulks paid the $700 consideration for the lease and expended $100 in improving the equipment, Dr. Center executing a deed to her for the lease. This deed was recorded on the —— day of July, 1926.

In the fall of that year Fulks and Dejarnett drilled a dry hole on the land of W. S. Tutt, on which they had a lease. They had several leases on adjoining lands, and each of the parties lessor agreed to furnish certain materials for this well, for which they were to be compensated in the event of a producing well, but which was to be donated in case the well came in dry. Tutt agreed to haul the coal necessary for fuel on this basis. Fulks had active charge of the work, and employed Tutt's son-in-law, George Cox, as a laborer; also Fulks and one of his employes boarded with Cox, Fulks agreeing to pay therefor. In this way the partnership became indebted to Cox in the sum of $312.50, which it was unable to pay. With the knowledge and consent of Fulks, Tutt purchased this claim from Cox and took a written assignment therefor. Tutt furnished certain other articles for the drilling operation and paid $50 in cash for the cutting of cordwood, which was used for fuel in the drilling. These items amounted to $179.40, making a total of $491.90 which he claimed due him. Dejarnett was divorced in the fall of 1926, and shortly thereafter he and Mrs. Roberta Bair were married. When Fulks fell behind in his payments, Tutt wrote Dejarnett and received two letters from him and his wife, which read:

"Little Rock, Ark., Dec. 27, 1926.

"Mr. W. S. Tutt, Campton, Ky.—Dear Mr. Tutt: We have just rec. a letter from Darley saying the well must be shot. We wrote and told him to drill four feet deeper and the well would not need to be shot, for there is lots of oil there. It will take over three hundred dollars to shoot it, besides what

we owe you. Our money is in such a place that we will not be able to get any before thirty days. We expected the oil from the Dr. Center well to meet expenses for this well, but Darley says he has not had time to have it pumped. We very much regret that matters have turned out in this way and that the work has been delayed. However we will not be able to send any more money before the time stated. We would be glad to hear from you. Wishing you and family a prosperous New Year, we are,
"Sincerely,
"Mr. & Mrs. N. L. Dejarnett."
"Little Rock, Ark., Jan. 6, 1927.

"Mr. Tutt, Campton, Ky.—Dear Mr. Tutt: We have rec. your letter and was very much surprised to hear that you sent the papers to be signed. We have not rec. any papers; a letter came from Darley last Eve. asking why we have not ans. We have been having a great deal of trouble with our mail here on account of some other people by the same name. We very much appreciate your advice and consider it quite a favor in you using your influence with the men. Will have the money there within two weeks to cover all expenses as I just had a letter from my atty. yesterday. We are very much pleased with the well, and expect to be there in the near future. Mr. Tutt, there is something else on your land beside the oil that well make you a rich man. I will show you when I come where it is. Please do not mention this to any one. Please ans. real soon. With all good wishes to you and yours, we are sincerely,
"Mr. & Mrs. N. L. Dejarnett."

Plaintiff also proved by J. C. Linden, an attorney, that in the fall of 1926: "N. L. Dejarnett . . . was asking me about a deed they had made to the property and that it had been made to his wife, and that he wanted it back in his name; it belonged to him, and was asking me how to get it done, and I advised him that he and his wife would have to deed it to a third person, and that person deed it back to him . . . This property I speak of is the Dr. G. M. Center lease and equipment."

However, it is not shown that Dejarnett was indebted to any one at the time of the purchase of the

Center lease; certainly not to Tutt, as the deed to the lease was executed and recorded before the work on the Tutt well was begun. Both Mr. and Mrs. Dejarnett testify positively that Dejarnett did not contribute any part of the consideration for this purchase. Fulks testifies that he was acquainted with Mrs. Bair; that she was a person of property living in Wilkes-Barre, and her check, which is fully described in the evidence, was used in paying for the Center lease as above indicated. Mrs. Dejarnett testifies that she has a son by her former marriage, and that she desired for this lease to be held jointly by her and her husband, so in the event of her death each would inherit from her equally. She further states that she was willing to assist her husband in drilling the Tutt well from the income of her oil well, and wrote the letters set out above at her husband's instance, but that she never at any time admitted that he owned or had any interest in the Center well. Considering this evidence in its entirety, it clearly appears that Fulks and Dejarnett were each personally liable for the firm's expenses, and that the Tutt account was properly chargeable to the firm; also it is clearly shown that the firm was liable to Cox for the amount of the assigned claim, and that with the knowledge and approval of Fulks the claim was properly assigned to Tutt. This gave Tutt a right of action upon the assignment. Newby & Taylor v. Hill & Million, 2 Metc. (59 Ky.) 530; Wallins Creek Collieries Co. v. Saylor, 214 Ky. 206, 282 S. W. 1095; Philadelphia Veneer & Lumber Co. v. Garrison, 160 Ky. 329, 169 S. W. 714. A principle easily distinguished from the one applying to a mere volunteer, who undertakes to pay the account of another and substitute himself as the debtor's creditor, in which case no recovery is allowed. Salyers v. Golden, 214 Ky. 227, 282 S. W. 1101; Noble v. Williams, 150 Ky. 439, 150 S. W. 507, 42 L. R. A. (N. S.) 1177; Causey v. Cohron, 216 Ky. 164, 287 S. W. 544; Ill. Cent. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A 1918A, 931. The suit was therefore clearly maintainable. True, George Cox should have been made a party to the suit on the assigned claim. Civil Code, sec. 19; Ky. Statutes, sec. 474. But no special demurrer was filed to the petition, and Cox testified for the plaintiff and fully established the assignment. He is therefore concluded by the judgment, and defendants can not suffer by the form of the action.

It is, however, more difficult to sustain the action of the chancellor in canceling the deed to Mrs. Bair. This deed was made by Dr. Center, not by Dejarnett. It was made and recorded before the Tutt indebtedness was contemplated, and could not be construed as a fraud upon Tutt's rights. The weight of the evidence is to the effect that the entire consideration was paid by Mrs. Bair. The only evidence to the contrary is that Dejarnett was at the time having domestic trouble with his former wife, and the loose statement of one witness that Dejarnett told him that he had paid the consideration for this lease, and, in order to prevent his former wife from getting it, had put it in Mrs. Bair's name. If this admission of Dejarnett is admissible as evidence against Mrs. Bair, it is insufficient to overturn the great weight of evidence to the contrary. It follows, therefore, that the court erred in canceling the deed in question; also there is neither pleading nor proof of any character tending to show that Mrs. Roberta Bair Dejarnett was a partner, or interested in drilling the Tutt well, and while the letters quoted supra indicate her intention to pay the firm's indebtedness out of the income from her oil well, it is clear that this was the firm's indebtedness, and these letters cannot be construed as a mortgage or other conveyance setting apart this property as a security for its debt, as required by the provisions of section 2137, Ky. Statutes.

It follows that the court erred both in canceling the deed to Mrs. Bair and in subjecting her property to the payment of appellants' debt. Wherefore the judgment is reversed, and cause remanded, for proceedings consistent with this opinion.