## Justice's Administrator v. Hopkins et al.

(Decided Dec. 13, 1935.)

A. F. CHILDERS for appellant.

W. K. STEELE and E. J. PICKLESIMER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Affirming.

In the month of March, 1929, Earl D. Parker, as administrator of John T. Justice, deceased, brought this suit to recover on a note for $3,000, executed by Frank Hopkins and Minda Hopkins on December 14, 1918, to the order of Bank of Beaver, and payable on or before ten years after date. The main defense was that, as the result of certain transactions, Frank and Minda Hopkins were absolved from liability on the note. The chancellor so held, and Justice's administrator appeals.

The facts are: On December 14, 1918, appellees purchased a tract of land in Pike county, Ohio, for the sum of $18,000. Of the purchase money they paid $9,000 in cash, and borrowed the remaining $9,000 from the Bank of Beaver at Waverly, Ohio. The loan was represented by three notes of $3,000 each, one of which is the note in question and secured by a mortgage on the farm. It is shown by the depositions of Frank Hopkins and P. H. Owens that in about a year after the purchase of the farm by appellees they traded the Ohio farm for certain real estate owned by P. H. Owens and wife, and located in Pikeville, Ky. At the time of the trade Owens and wife owed about $8,000 on the property in Pikeville, and appellees owed $9,000 on the Ohio property, and by the terms of the trade Owens and wife assumed the indebtedness on the Ohio property, while appellees assumed the indebtedness on the Pikeville property. Appellees paid the $8,000 indebt-

edness against the Pikeville property, and Owens and wife discharged two of the notes, amounting to $6,000 on the Ohio property, thus leaving a balance of $3,000 due on the Ohio property, and represented by the note sued on. After keeping the Ohio farm for a little less than a year, Owens and wife traded it to John T. Justice for some property in Chinnville, Ky. According to Owens, Justice assumed the payment of the remaining $3,000 against the Ohio property as represented by the note in question, while he was to pay off an indebtedness of about $1,700 on the Chinnville property. Some time after the trade was consummated Owens leased the Chinnville property, and later on it was destroyed by fire. According to A. H. Justice, a brother of John T. Justice, who testified for appellant, the latter and P. H. Owens met in his office at Ashland to settle their differences after the property at Chinnville was destroyed by fire. Owens said that the insurance company had refused to pay him insurance unless the mortgage on the property was released. The mortgage was for $1,500. Of this $750 had already been paid, and John T. Justice paid the balance of $750 about thirty days after he and P. H. Owens met. It further appears that Owens paid to John T. Justice the sum of $1,680, which it is conceded should go as a credit on the $3,000 note. J. Lee Calhoun, a resident of Ohio, and a brother-in-law of appellee Frank Hopkins, deposed that he had a conversation with John T. Justice, after he had taken possession of the Ohio farm, in which he mentioned there was a note of about $3,000 against the farm, and that he was to "consume" part of the note, half, if not more, and Frank Hopkins was to "consume" what he owed on the place at Chinnville.

For appellant, Earl D. Parker testified that he made two trips to Pikeville, Ky., to see P. H. Owens about the payment of the note. Owens refused payment on the ground that the note was not due, and never claimed that he had any arrangement with John T. Justice by which Justice would assume payment of the note. According to Mrs. John T. Justice, Frank Hopkins came to her store in Waverly, Ohio, where they had a conversation about the note. He tried to persuade her to come to Pikeville and sue Owens on the note. Wallace Farley stated that he was present on one occasion and heard a conversation between P. H. Owens and Earl Parker in reference to the note, and

·Owens made no claim that John T. Justice assumed payment of it. M. C. Justice, a brother of J. T. Justice, testified that Earl D. Parker left the note in question with him for collection and he had several conversations with Owens about the note, but Owens never claimed that he did not owe it, or that J. T. Justice had .assumed it. It was further shown that a short time before the suit was brought P. H. Owens was adjudged a bankrupt in the United States court for the Eastern District of Kentucky, and that among the debts scheduled was a note for $3,000, subject to a credit of $1,680, which he stated in the schedule was the property of Mrs. J. T. Justice of Waverly, Ohio. P. H. Owens explains this by saying that he agreed with Frank Hopkins to pay the note, and there being nothing to .show that Justice was to pay it, he scheduled the debt.

Appellant insists that the exceptions to the deposition of P. H. Owens having been properly sustained, there was no evidence tending to show that John T. .Justice agreed to assume the indebtedness against the Ohio farm, except that of J. Lee Calhoun, which was too vague and indefinite to justify a finding to that ·effect. The prohibition in the Code against one testifying concerning a transaction with a person then deceased applies only in cases where the witness testifies for himself. Subsection 2, sec. 606, Civ. Code Prac. One ·testifies for himself when his interest in the subject-matter is certain and direct, and not merely remote or contingent. Farmers' Exchange Bank v. Moffett, 256 Ky. 160, 75 S. W. (2d) 1063. The test is, will the witness gain or lose by the direct legal operation and effect ·of the judgment, or will the record be legal evidence for or against him in some other action. Laka, Adm'r, etc., v. Krystek, 261 N. Y. 126, 184 N. E. 732, 88 A. L. R. 243. At common law a valid release of his interest may in good faith remove the disqualification of an interested ·witness. Gillespie v. Gillespie's Heirs, 2 Bibb, 89, and such would be the rule now, were it not for subsection 7, sec. 606, Civil Code of Practice, providing that the .assignment of a claim by a person who is incompetent to testify for himself shall not make him competent to testify for another. Harpending's Ex'rs v. Daniel, 80 Ky. 449; Davis v. Strange, 156 Ky. 420, 161 S. W. 217. Before giving his evidence, Owens was adjudged a bankrupt. The note in question was duly listed, and not being one of the debts excepted from the operation of

the Bankruptcy Act, Owens' discharge released him from all liability thereon. Bankr. Act, sec. 17, 11 U.S. C.A. sec. 35. Williams v. U. S. Fidelity & Guaranty Co., 236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713. In the circumstances, he will not gain or lose by any judgment that may be rendered in this action, nor will the record be legal evidence for or against him in some other action. We therefore conclude that he was a competent witness for appellees. With his evidence before the court, the case assumes a different aspect. He solemnly declares that, in his trade with J. T. Justice, Justice assumed the payment of the $3,000 against the farm, while he assumed the balance of $1,700 or $1,800 against the Chinnville property, which he subsequently discharged. Not only is it the more natural view of the transaction that each of the parties should assume the indebtedness on the property which he received in the trade, but Owens' evidence is further confirmed by the evidence of J. Lee Calhoun to the effect that John T. Justice told him that there was a note of about $3,000 against the farm, all or part of which he had agreed to "consume." Looking at the transaction in the light of the conduct of the parties, and of the surrounding circumstances, we are constrained to concur in the conclusion of the chancellor that J. T. Justice paid the note in question not merely because it was secured by a lien on the land which he had purchased, but because he had assumed the payment thereof in his trade with Owens.

Judgment affirmed.