### QUIN v. QUIN et al.

Court of Appeals of Kentucky.
March 6, 1953.

As Modified on Denial of Rehearing
June 19, 1953.

Robert E. Hogan, Louisville, for appellant.

Woodward, Hobson & Fulton, Louisville, W. Howard Clay, Louisville, for appellees.

STEWART, Justice.

This appeal involves the allowance and disallowance of certain claims against the estate of Whayne S. Quin, Sr., deceased.

Whayne S. Quin was discharged from the Navy on December 16, 1945, and on the following day he and his former secretary, Mary Frances Quin, defendant herein, were united in marriage. The couple resided in Louisville, where Quin operated a wholesale lumber business, until in March, 1946, when, having become seriously ill, Quin was taken by his parents to their home in Clarksville, Tennessee. There, March 24, 1946, he died intestate, leaving as his heirs two children by a former marriage. Mary Frances Quin was appointed by the Jefferson County Court as administratrix of the estate, which consisted of assets listed as $7,947.54 in cash. We shall refer to Mary Frances Quin, individually and as administratrix, as defendant.

This suit was instituted by plaintiffs, Unselt W. Quin and S. T. Quin, parents of decedent, seeking a settlement of the estate. In their petition, plaintiffs alleged that the estate was indebted to them in the sum of $2,549.95, representing the expenses of the last illness and the funeral of decedent, plus a premium on an insurance policy, all paid by them on behalf of their son. When we refer to plaintiffs herein we mean Unselt W. Quin and S. T. Quin. In an answer and cross-petition, defendant admitted the payment of the bills mentioned but maintained the parents agreed voluntarily to pay these bills and at the same time waived any right as to reimbursement from the estate. The infant children of decedent were joined as parties plaintiff and it was further prayed that the action be referred to a commissioner to settle the administratrix' accounts.

On July 15, 1948, approximately one year after the case had been referred to a commissioner, plaintiffs filed an amended petition, averring that, in addition to the debt already sought, they were entitled to recover $10,000 from the estate, due them as the amount borrowed on notes executed by decedent to the Lincoln Bank & Trust Company of Louisville, which indebtedness by contract had been guaranteed by plaintiffs and which had been subsequently paid by them. The paid notes had been transferred by the bank to plaintiffs at their request and were entered as evidence in the record. It was pleaded further that, besides the assets of the estate consisting of $7,947.-54 in cash, as reported by the administratrix, there were in her possession belonging to the estate a set of silverware valued at $1,500 and a silver tureen valued at $100, which articles it was claimed defendant had converted to her own use. Defendant then filed an amended answer and supplemental cross-petition as administratrix of the estate of Whayne S. Quin, and as an individual, whereby she alleged that the $10,000 paid by plaintiffs to discharge the indebtedness on the notes was a gift to decedent, and that the silverware and the tureen had been bestowed upon her as a wedding present by decedent. She also filed a claim against the estate for $2,710.80, representing the aggregate of certain sums she contended were advanced by her to decedent before her marriage to him and while he was still in the naval service and also after their marriage.

The case was submitted to a commissioner who, on June 30, 1950, filed a report recommending the disallowance of plaintiffs' claims and the allowance of defendant's claims against the estate. This report was set aside by the Chancellor on January 31, 1951, and the action was again referred to the commissioner with direction that he make and report a final settlement of the estate in conformity with an opinion handed down by the Chancellor on the same date.

The commissioner's final report, so far as it is pertinent to the issues involved in this appeal, allowed plaintiffs to recover the claim first sued on of $2,549.95 and the sum of $9,652, on the notes, the latter figure representing the $10,000 item reduced by the amounts decedent had paid thereon. Defendant's claim of $2,710.80 was disallowed. The silverware and the tureen were adjudged to belong to the estate and were ordered turned over to the lower court to be sold at public auction and the funds derived therefrom to be deposited with the receiver of the court. Exceptions to the above proceedings were duly filed by defendant and were seasonably overruled.

A reversal is urged because (a) the proof of claim of $10,000, based on the notes paid by plaintiffs, was lacking in some essentials and was not verified in the manner provided by KRS 396.010; (b) the two claims filed by the parents of deceased should have been disallowed; (c) the claim of defendant should have been allowed; and (d) the silverware and the tureen should have been awarded to defendant individually.

█ The first complaint is unfounded for the reason that depositions were taken in the action which fully established the debt and we have held that such a method of proof satisfies the statutory requirement of an affidavit as an effective verification of the claim. Flimin's Adm'x v. Flimin, 255 Ky. 772, 75 S.W.2d 502; Tanner v. Ayer, 209 Ky. 247, 272 S.W. 720.

Defendant next contends that when plaintiffs paid the sum of $2,549.95, representing an insurance premium and the bills growing out of decedent's last illness and death, they did so with the intention of waiving any right to reimbursement therefor. It was shown that after Whayne S. Quin was taken by his parents to their home all arrangements were made by them and they incurred the expenses connected with his sickness and burial. Defendant testified she attended the funeral and that, after returning from the cemetery to plaintiffs' home, she told Mrs. Unselt W. Quin and her husband to send her the bills representing the above amounts and she would take care of them. She stated Mrs. Quin replied that she and her husband would pay the bills, adding: " * * * that's the least we can do for Whayne, you don't owe us one thing." Defendant's brother and two of her friends who accompanied her on the trip testified in a similar vein. Plaintiffs did not deny they informed defendant the bills would be paid by them but they said they did so only to prevent inconvenience to defendant on this occasion, and Mrs. Quin later in her rebuttal testimony remarked thus: " * * * but we certainly expected the insurance money * * * to take care of his bills."

█ So far as the settlement of the $2,549.95 item is concerned we think the evidence is overwhelmingly to the effect that this payment was voluntarily undertaken by plaintiffs and that it was made at the time without any expectation upon their part or any promise or agreement by defendant of repayment. It is apparent from the record that the idea of pressing a claim against the estate, after certain insurance money had later been paid over to defendant, was an afterthought. But, regardless of the motive that actuated plaintiffs to liquidate the bills and the insurance premium, they freely assumed this burden and we believe they cannot now recoup this amount from the estate. We therefore conclude that the Chancellor's allowance of this claim constituted a reversible error. Clark v. Clark's Adm'r, 253 Ky. 697, 70 S. W.2d 15; Salyers v. Golden, 214 Ky. 224, 282 S.W. 1101. The general rule on this subject is concisely set forth in the Restatement of the Law on Restitution, Sec. 112, p. 461, in this language:

"A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons."

We are unable to agree with defendant's argument that decedent's parents made a voluntary gift to him of the notes representing the sum they were forced to pay off as his guarantors. In attempting to disprove plaintiffs' right to the property involved, defendant testified that Mrs. Unselt Quin told her this: "Whayne does not owe us one red cent on these notes." Defendant's mother, Irma Roberts, her father, William E. Roberts, and her sister, Tillie Walsh, all testified that during the first meeting of defendant's and decedent's parents, the latter made some rather general remarks about decedent's indebtedness to them, such as: "We are going to wipe the slate clean." Plaintiffs contend no such statements were ever made. A letter from their son dated April 8, 1944, was introduced by them in which he notified them he had paid $100 on the notes and he hoped to pay the full amount some day.

We find nothing in the record indicative of the fact that decedent ever expressed the belief that plaintiffs had made him a gift of the notes or that they had ever released him from his liability on them. By obtaining an endorsement of the notes plaintiffs thus signified they did not intend to relieve their son of his duty to repay them, and the record clearly reveals that he hoped he would be able to liquidate them at some future time. Furthermore, there is no proof that the notes were ever actually delivered to decedent at any time, and nothing prevented the delivery of them to the son if the parents had intended their rights in them to pass irrevocably to him. To make valid a gift inter vivos there must be an intention to transfer title to the property as well as some act of delivery by the donor and an acceptance of the property by the donee. See Anderson's Adm'r v. Darland, 192 Ky. 624, 234 S.W. 205. All of the elements just mentioned are lacking here.

The Chancellor found that defendant presented insufficient evidence to establish any part of her claim of $2,710.80 against the estate. She and her sister, Tillie Walsh, testified that the money included some $1,425 loaned before her marriage to decedent, $265 paid as fees for decedent's divorce from his first wife, and certain expenditures for other items, such as gas and oil, dishes and furniture. The purported advancements to decedent, for the most part, covered a period while he was serving in the navy at a monthly salary, with food and clothing furnished to him, and there is no conceivable reason why he should have been borrowing money from his secretary. After reviewing the evidence on this issue, we do not feel disposed to disturb the Chancellor's finding in this respect.

In declaring the silverware and the tureen a part of decedent's estate, the Chancellor expressed this opinion: "All of the testimony concerning that purported gift (the silverware and the tureen) is incompetent as a transaction with a dead person." While it is true that under Section 606(2) of the Code of Civil Practice defendant could not state what decedent had said to her concerning the silverware and the tureen, yet any disinterested person who had heard such statements could testify as to them. The prohibition in the foregoing Code subsection against one testifying concerning a transaction with a person then deceased applies only in those cases where the witness who has an interest in the subject matter testifies for himself. Justice's Adm'r v. Hopkins, 261 Ky. 681, 88 S.W.2d 688. The Chancellor also concluded that all the testimony concerning what decedent had said about the silverware and the tureen was hearsay. We cannot accept this ruling. The statements made by decedent, as testified to by defendant's witnesses, come within the well-recognized exception to the hearsay rule, known as "declarations against interest." A declaration against interest embraces any statement by a person now dead which is contrary to the proprietary

or pecuniary interest of that person. 20 Am.Jur., Evidence, Sec. 556, p. 467. See also Carpenter v. Carpenter, 153 Or. 584, 56 P.2d 305, 57 P.2d 1098, 58 P.2d 507, 105 A.L.R. 386, and the annotations thereto. The testimony of the disinterested witnesses to the effect that decedent told them he had given the silverware and the tureen to defendant was competent, and the Chancellor committed a reversible error when he excluded it. The fact that defendant had these articles in her possession and that decedent proclaimed his intention to give them to her is sufficient to establish their gift to her, there being no showing to the contrary. Galbraith's Adm'r v. Galbraith, 5 Ky.L.Rep. 857 (abstract).

Wherefore, the judgment is reversed in so far as it allows plaintiffs the sum of $2,549.95 and disallows defendant the set of silverware and the silver tureen and the judgment is affirmed in so far as it allows plaintiffs the sum of $9,652 and disallows defendant the sum of $2,710.80; and it is directed that the judgment be set aside and a new one entered in conformity herewith and that any further proceedings be consistent with this opinion.