Argued July 5, affirmed as modified October 19, 1972

# GAS-ICE CORPORATION, *Appellant, v.*
# NEWBERN, *Respondent.*

501 P2d 1288

See also 501 P2d 1294.

*Kenneth M. Novack,* Portland, argued the cause for

appellant. 

*Nels Peterson,* Portland, argued the cause for respondent. 

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

TONGUE, J.

This is a suit by a corporation against its former president, both individually and as the executor of the estate of his deceased wife, alleging that he violated his fiduciary duty by making profits and receiving other benefits in various transactions with the corporation, and demanding an accounting. Plaintiff appeals from those portions of the decree which denied most, but not all, of such relief.

Plaintiff contends that the trial court erred as follows: (1) In not determining that the so-called "Phillips contract" was acquired by defendant and sold to plaintiff in breach of his fiduciary duty; (2) In not determining that the so-called "tank farm" was acquired by defendant and leased to plaintiff in breach of that duty; (3) In not cancelling the so-called "Seattle lease" by plaintiff of a warehouse owned by defendant and ordering the return of allegedly excessive rentals received by defendant; and (4) In not determining that defendant is liable to plaintiff for the cash value of two life insurance policies allegedly "expropriated" by him.

The plaintiff corporation is a Washington corporation in which the majority of the outstanding stock was formerly owned by the family of defendant,

who was its former president and the principal developer of its business. After the sale of defendant's stock to a newly formed holding corporation this suit was filed by the plaintiff corporation alleging irregularities relating to transactions which took place during the years while Mr. Newbern was its president. The trial judge found in favor of defendant with respect to the transactions involved in these assignments of error upon the grounds, among others, that under the facts and circumstances of this case there was no breach of fiduciary duty and that most of such transactions were ratified by the board of trustees of the corporation.[1]

This being a de novo appeal in a suit in equity we have reviewed the entire record, including over 2,300 pages of testimony and voluminous exhibits, and agree with the oral findings and the conclusions of the trial judge in denying the relief demanded by plaintiff on the first three of these assignments of error.

The remaining assignment of error, however, is more difficult.

*Facts, contentions and findings relating to insurance policies.*

In 1938 the corporation issued bonds to raise needed capital funds. To make the purchase of these bonds more attractive, and out of concern over what might happen if Mr. Newbern should die, it was suggested that $50,000 in life insurance be taken out on

---

[1] As to the second assignment, however, involving the "tank farm," the trial court cancelled the lease to that property as of May 1, 1970. As to the fourth assignment, the trial judge directed defendant to repay some of the insurance premiums paid by plaintiff, as discussed further in this opinion.

his life, naming the corporation as beneficiary. Two policies, each for $25,000, were then applied for by and issued to Mr. Newbern, and the first premiums were paid by him. These policies both provided that the beneficiary could be changed without notice to the designated beneficiary. In 1940 and 1942 these two policies were converted from term to straight life policies, but the beneficiary was not changed.

Most, if not all, of the remaining premiums on the policies, however, were paid by the corporation, totaling more than $50,000.[2] The corporation was not reimbursed by Mr. Newbern for these premium payments. The books of the corporation did not show these payments as business expense. Neither were these policies listed on its books as corporate assets, at least since 1955. There was evidence, however, that Mr. Newbern had given instructions not to do so. There was also evidence that for tax purposes the premium payments were reported as an asset purchase by the corporation. On the other hand, Mr. Newbern did not report these premium payments by the corporation as income to him.

In subsequent years these policies were borrowed upon by Mr. Newbern to provide funds for use by the corporation. They were also later assigned to the Small Business Administration as security for a loan by it to the corporation.

In early 1968, after the SBA loan had been paid and after negotiations were under way for the sale of defendant's stock, Mr. Newbern changed the bene-

---

[2] It appears that Mr. Newbern made 12 premium payments. To make such payments, however, he borrowed on the policies and then billed the corporation for such loans and payments. The corporation paid the interest on such loans and eventually repaid Mr. Newbern for all such payments.

ficiary of these policies to his wife and took them with him when he later left the corporation. He testified, however, that before the stock purchase was completed he informed the representative of the purchasers of his intention to do so.

Defendant Newbern contends that he was at all times the owner of these policies, with the right to make a change of the beneficiary, and that the payment of premiums by the corporation was in consideration for the use of the policies by the corporation in the financing of its operations. Defendant also says, without reference to the record, that "his conduct with respect to the policies was open and above board and certainly known to the Board of Trustees."

Plaintiff denies that its trustees had knowledge of, much less authorized or approved of any such understanding. Defendant has not called attention to any reference in the minute book and records of the corporation which shows the authorization or approval by the trustees of any such understanding and we have found none.

At the time of trial plaintiff's position was not entirely clear. Thus, while never abandoning the contention, as alleged in its complaint, that the policies were assets of the corporation, with a cash value of over $32,000, the principal thrust of plaintiff's contentions on trial was that, in any event, and even if the policies belonged to Mr. Newbern, rather than to the corporation, it had paid premiums totaling over $50,000 and was entitled to repayment of that entire sum.

After considering these contentions by the parties, the trial court found, in effect, that the insurance policies belonged to defendant Newbern and were not assets of the corporation. The trial court also found, however, that payment of the premiums by the cor-

poration constituted a loan or advance to Mr. Newbern for which he was indebted to the corporation to the extent that such a debt was not barred by the three-year Washington statute of limitations. (Rev Code Wash Ann § 4.16.080) Accordingly, the trial court entered a judgment in favor of plaintiff for $1,968.50, representing the premiums paid by the corporation within that three-year period, on April 1, 1967, with interest from that date. Mr. Newbern apparently paid the subsequent premiums. As previously stated, that decree also denied all other claims by plaintiff except for the cancellation as of May 1, 1970, of the lease to the so-called "tank farm."

Plaintiff then appealed from that decree, except for its provisions canceling the lease and entering judgment for $1,968.50 for the 1967 life insurance policy premiums. No cross-appeal was filed by defendant and he paid into court the amount of that judgment. Plaintiff accepted that payment and signed a "partial satisfaction of judgment," with a notation purporting to do so "without prejudice to that portion of the decree being appealed."

Defendant contends that acceptance of the payment of that judgment "precludes appellant from any further recovery," particularly on the matter of the insurance policies, upon the ground that a litigant cannot accept the benefits of a judgment and also appeal from it, citing *Anderson v. Anderson,* 232 Or 160, 374 P2d 479 (1962), among other cases.

*The acceptance of payment of the partial judgment did not bar plaintiff's appeal under the facts of this case.*

■ We previously denied defendant's motion to dismiss this entire appeal on that ground, as well as

defendant's further motion to dismiss that portion of the appeal relating to the insurance policies.[9]

Whatever may have been the law on this subject when *Anderson* was decided by this court in 1962, that law was clarified, if not changed, by the decision of this court in *Hofer v. Hofer*, 244 Or 88, 415 P2d 753 (1966), in an opinion by Justice Lusk in which it was held that the acceptance of benefits does not always bar an appeal and (at p 93) that:

> "The rule that the acceptance of benefits to which the appellant would be entitled in every view of the case * * * does not constitute a waiver of the right of appeal * * * applies * * * where the appellate court is without power to render a decision less favorable to the appellant."

In *Hofer* this court also distinguished several previous decisions on this subject (including most of those now cited by defendant) and stated (at p 93) that *Anderson* was "wrongly decided."

In the present case, defendant did not cross-appeal. Therefore, on de novo review, this court may not render a judgment or decree more favorable to him and less favorable to plaintiff than was the decree entered below. *Hofer v. Hofer, supra* at 92. See also *Taylor v. Pearl, PicKell,* 244 Or 81, 86, 415 P2d 757 (1966). Thus, defendant would have remained liable for the amount of that judgment and decree, whatever the outcome of this appeal. It follows that plaintiff is entitled to retain the money it withdrew from the trial court as a result of that judgment, irrespective of the

---

[9] We have also previously considered and have rejected defendant's motion that plaintiff's appeal should be dismissed as to the estate of defendant's deceased wife upon the ground that this court has no jurisdiction over him, a Washington resident, as executor of the estate of his wife.

outcome of the present appeal, because on appeal this court may not require a result less favorable to it than the judgment of the trial court.

It is true that such a result may not follow when, as a result of an appeal, a case is "opened up" in such a manner that there may be a new trial and one which may result in a new judgment under which the appellant may receive nothing. This is not such a case, however, because it is a suit in equity in which appellant neither requested a new trial nor alleged errors or irregularities of such a nature as might require a new trial, and there has been no cross-appeal by respondent.

■ Instead, this is a case which falls within the rule that if it is possible for an appellant to obtain a more favorable judgment in the appellate court, without the risk of a less favorable judgment from a new trial of the whole case, then the acceptance of what the original judgment gives to him does not constitute a waiver or bar to his right of appeal. *Hofer v. Hofer, supra* at 94-95. See also *Kincaid v. Fitzwater,* 257 Or 170, 178, 477 P2d 712 (1970), and Annot., 169 ALR 985, 1010, 1021 and 1026. See also *Pac. Gen. Contrs. v. Slate Const. Co.,* 196 Or 608, 611, 251 P2d 454 (1952).

Under these facts, and applying the rule of *Hofer,* we hold that the acceptance of payment of the amount of the judgment of the trial court did not bar plaintiff from its appeal in this case, including the contention that the trial court erred in not finding that the insurance policies were assets of the corporation.

*The insurance policies for which premiums were paid by the corporation were assets of the corporation.*

■ It is well established that although the officer of a corporation may take title to property in his own

individual name, if funds of the corporation are used to pay for such property it will ordinarily be considered to be an asset of the corporation, under the theory of an implied trust for its benefit. 3 Fletcher, Cyclopedia Corporations (perm ed) 212, § 853; Lattin, Corporations (2d ed) 282-85, § 79; 1 P-H Corp 1731, § 1725. See also 1 Hornstein, Corporation Law and Practice 566, § 447; 2 Oleck, Modern Corporation Law 769-70, §§ 976-7; and Note, Corporate Opportunity in the Close Corporation—A Different Result?, 56 Geo L J 381, 383 (1967).

■ In our view, this rule is applicable to a policy of insurance on the life of the officer of a corporation for which the premiums are paid by the corporation, with the result that such an insurance policy is an asset of the corporation, at least in the absence of satisfactory evidence that the directors or trustees of the corporation authorized or approved of some arrangement to the contrary. Our decision in *Jansen v. Tyler,* 151 Or 268, 47 P2d 969, 49 P2d 372 (1935), although distinguishable on the facts, is in accord with this view. (See 151 Or at 288 and 49 P2d at 372.) Although this case involves a Washington corporation, no Washington case in point has been called to our attention.

In this case, although we do not question the complete good faith of Mr. Newbern, we find no such evidence.

It also appears, as previously stated, that the premium payments made after these policies were converted from term to straight life insurance, so as to acquire a cash value, were made by the corporation or with funds for which defendant charged the corporation.[①]

---

[①] See note 2, *supra.*

Under these facts, we hold that despite the complete good faith of Mr. Newbern these policies of life insurance, although originally purchased by him in his individual name, became corporate assets and were impressed with a trust under which defendant held them as a fiduciary for the benefit of the corporation.[5] We also hold that this result is not changed by the fact that the policies provide that the name of the beneficiary could be changed without consent of the corporation as the original named beneficiary where, as in this case, the premiums for the policies were paid by the corporation.

Thus, we need not decide plaintiff's contention that any such authorization or ratification must be recorded in the corporate minute book and that, in any event, and as a matter of law, the directors or trustees of a corporation have no authority to authorize or approve such an agreement.[6]

As for defendant's contention that plaintiff's claim is barred by laches, we hold that there was no wrongful appropriation by defendant of these policies until 1968, when he changed the beneficiary of the policies, if not until he subsequently removed them from the office of the corporation. Thus, regardless of whether or not a claim by the corporation for reimbursement of premiums paid by it for more than twenty years may have been barred by laches, its claim that the policies were assets of the corporation and had

---

[5] This result is not inconsistent with Jansen v. Tyler, 151 Or 268, 47 P2d 969, 49 P2d 372 (1935), in which credit for dividend payments was prorated, because in this case all of the annual dividend payments made after the policy was converted to straight life, so as to accrue a cash value, were made by the corporation or with funds for which defendant charged the corporation.

[6] See also ORS 743.228 and 743.003.

been wrongfully appropriated by defendant was clearly not barred by laches.

In considering the nature of the remedy most appropriate on this issue and under the facts of this case, we note that plaintiff's complaint prayed that defendant "be ordered to reconvey to plaintiff" the insurance policies "or, in the alternative," that defendant "be deemed to hold such policies as constructive trustee for the benefit of plaintiff."

■ For all of these reasons, and under all of the facts and circumstances of this case, we hold that this case must be remanded to the trial court with directions to enter a further judgment and decree under which defendant shall be ordered to pay to plaintiff the cash value of the two insurance policies as of the date of the appropriation of such policies by him, less the amount of the judgment already paid by defendant for the 1967 premiums paid by plaintiff, unless defendant shall elect to return the policies to plaintiff and to restore it as the beneficiary of such policies. In that event, however, plaintiff shall be required to reimburse defendant for the amount of any premiums paid by him subsequent to 1967, as well as for the amount of the judgment already paid by defendant to plaintiff for the 1967 premiums, as previously paid by plaintiff. In all other respects the judgment and decree of the trial court is affirmed.

Affirmed, as modified. Costs to neither party.