Argued December 5, 1974, reversed and remanded
February 21, 1975

SCHLECHT ET AL, *Appellants-Cross-Respondents,*
*v.* BLISS, *Respondent-Cross-Appellant.*

CHARPENTIER ET AL, *Appellants-Cross-*
*Respondents, v.* BLISS, *Respondent-Cross-*
*Appellant.*

SCHLECHT ET AL, *Appellants-Cross-Respondents, v.*
BLISS, *Respondent-Cross-Appellant.*

SCHLECHT ET AL, *Appellants-Cross-Respondents, v.*
BLISS, *Respondent-Cross-Appellant.*

532 P2d 1

*Joseph F. Ceniceros,* Portland, argued the cause for appellants and cross-respondents. With him on the briefs were Bailey, Doblie and Bruun, Portland.

*George M. Joseph,* of Bemis, Breathouwer & Joseph, Portland, and Walter H. Grebe, Jr., of Morrison, Bailey, Dunn, Cohen & Miller, Portland, argued the cause and filed a brief for respondent and cross-appellant.

Before O'Connell, Chief Justice, and McAllister, Holman, Howell, Bryson, and Sloper, Justices.

HOWELL, J.

Plaintiffs, trustees of four employee benefit trust funds, filed four suits in equity against the defendant, a roofing contractor, to require defendant to remit certain amounts to the trustees for the benefit of defendant's employees. Specifically, the suits sought an audit of defendant's payroll records for the period of June 17, 1969, to the date of trial, May 24, 1973; an accounting for the amounts found owing to the trusts during that time; and for liquidated damages of 10 per cent of the amounts found due. The cases were consolidated for trial and appeal. The trial court ordered an audit only for the period from June 17, 1969, through May 31, 1972, awarded plaintiffs $10,093.28, and denied liquidated damages.

MOTION TO DISMISS APPEAL

Defendant has moved to dismiss the appeal. We denied the motion with leave to renew on argument.

The plaintiffs' notice of appeal, filed December 17, 1973, stated:

"This appeal is taken only from those portions of the Decrees which:

"(1) Allowed plaintiffs an accounting only through May 31, 1972, instead of through May 24, 1973, the time of trial as prayed for by plaintiffs.

"(2) Denied plaintiffs liquidated damages as prayed for by plaintiffs on the amounts found owing to plaintiffs by defendant."

Defendant subsequently filed a Notice of Cross Appeal but refused to file a supersedeas bond. Thereafter, on March 7, 1974, plaintiffs garnisheed defendant's bank account and secured $390.24. On April 8 defendant paid the balance of the judgments, which were satisfied by plaintiffs on April 25.

Defendant asserts that this appeal should be dismissed on the grounds that the plaintiffs, by accepting the above payments and signing the satisfaction of judgment, have accepted the benefit of the judgment and thus cannot appeal therefrom.

In *Pac. Gen. Contrs. v. Slate Const. Co.*, 196 Or 608, 611, 251 P2d 454 (1952), this court said:

"* * * [A] party cannot claim the benefit of a judgment and at the same time appeal from it. The right to proceed on the judgment and enjoy its fruits and the right to appeal are not concurrent. On the contrary, they are totally inconsistent."

*See also Zerkel v. Lindsey,* 270 Or 517, 528 P2d 1041 (1974).

The above rule is predicated upon the theory that the law will not allow an appellant to occupy an inconsistent position with regard to his appeal. *Carpenter v. Carpenter,* 153 Or 584, 56 P2d 305, 57 P2d 1098, 58 P2d 507, 105 ALR 386 (1936). This theory has been variously denominated estoppel, waiver or release of errors. Thus, it has been held that a spouse may not accept alimony payments and appeal the validity of the entire decree. *Bulpitt v. Bulpitt,* 107 Cal App 2d 550, 237 P2d 539 (1951). And this court has held that, where plaintiff sought the alternative

and inconsistent remedies of specific performance of a stock subscription agreement or cancellation of defendant's stock and the plaintiff accepted the benefits of the trial court's decree of specific performance, he may not appeal the denial of the cancellation of the stock. *Bell Rose Sanitarium v. Metz,* 246 Or 475, 425 P2d 168 (1967).

■■ However, as a necessary corollary to the above rule, it is generally recognized that an appeal *may* be maintained where that appeal is not inconsistent with the acceptance of the benefits of the judgment or decree. The United States Supreme Court, in *Embry v. Palmer,* 107 US 3, 8, 2 S Ct 25, 27 L Ed 346 (1882), held:

"* * * [N]o waiver or release of errors, operating as a bar to the further prosecution of an appeal or writ of error, can be implied, except from conduct which is inconsistent with the claim of a right to reverse the judgment or decree, which is sought to bring into review. * * *"

Thus, an appeal may be maintained where that appeal cannot affect the appellant's right to the sum collected, for in such a case there is no inconsistency. As stated by the Supreme Court of Wisconsin:

"* * * It is only when the appellant stands in the attitude of holding the fruits of the judgment to which he may not be entitled if his appeal succeeds that the rule stated applies." *Fiedler v. Hower,* 99 Wis 388, 75 NW 163, 166, 67 Am St Rep 865 (1898).

■ There are several situations where the appellant may, on the one hand, accept the benefits of the judgment or decree and yet properly maintain an appeal. If there is an irrevocable admission of an amount due, either in the pleadings or otherwise, the acceptance of

that sum will not preclude an appeal. *Hofer v. Hofer,* 244 Or 88, 93, 415 P2d 753 (1966).

■ Likewise, and of particular relevance to the instant case, it has been held that one may accept the benefits of a judgment or decree and appeal therefrom if the provisions of the decree are divisible, and if the pleadings of the appellant do not place those portions of the decree accepted by the appellant in jeopardy. *See Fiedler v. Hower,* supra; *Reed v. Reed,* 82 Ariz 168, 309 P2d 790 (1957). The rule is well stated in *United States v. Newton Livestock Auction Market, Inc.,* 336 F2d 673, 676 (10th Cir 1964):

> "* * * [W]hen a judgment adjudicates separable or divisible controversies, a party may accept benefits of the separate features of the judgment and challenge the features adverse to him. * * *"
> (*Footnotes omitted.*)

And in *Peck v. Richter,* 217 F 880, 881 (8th Cir 1914), the court, after stating the general rule that one may not accept the benefits of a judgment and appeal therefrom, said:

> "* * * This is a general rule and is well-established, but it is subject to several exceptions. It will be sufficient to point out one of these:
>
> " 'When Judgment Settles Distinct Controversies. When a judgment or decree settles two or more distinct controversies, the acceptance of a sum of money, to which appellant is declared to be entitled by one portion of the judgment or decree, does not estop him from appealing from another and independent adjudication therein.' 2 Cyc. 654."①

---

① It has also been held that acceptance of an award of damages does not preclude an appeal on the ground that those damages were inadequate:

> "* * * It is a generally accepted rule of law that where a judgment is appealed on the ground that the damages are inadequate, acceptance of payment of the amount of the un-

■ In summary it is necessary, in ruling on a motion to dismiss an appeal, to examine the relief sought by the appellant on appeal. If this relief is consistent with the acceptance of the benefits of the judgment or decree of the trial court, then the appeal will be heard.

> "By enforcing a judgment or decree by execution or otherwise a party clearly waives his right to appeal *unless the decree is such or the circumstances such that there is no inconsistency between such enforcement and the appeal.*" *Carpenter v. Carpenter,* supra at 590. (Emphasis added.)

■ In the instant case there is no inconsistency between the enforcement of the decree and the maintenance of this appeal. The trial court's decree was divisible. The appellants accepted payment under the decree allowing accounting for the period of June 17, 1969, through May 31, 1972. They appealed those portions of the decree denying accounting for the period of June 1, 1972, through May 24, 1973, and denying liquidated damages. The test for divisibility was stated in *Pac. Gen. Contrs. v. Slate Const. Co.,* supra at 612:

> "* * * 'When the provisions of a judgment are so closely connected and mutually dependent, that a reversal as to one would render necessary the reversal of the others, then a party cannot take the benefit of some of such provisions and still retain the right to appeal.' *State v. Wells, Fargo & Co.,*

---

satisfactory judgment does not, standing alone, amount to an accord and satisfaction of the entire claim." United States v. Hougham, 364 US 310, 312, 81 S Ct 13, 5 L Ed 2d 8, reh. denied 364 US 938, 81 S Ct 376, 5 L Ed2d 372 (1960).

*See also* Shaver Transportation Company v. Chamberlain, 399 F2d 893 (9th Cir 1968); Glasper v. Wright Root Beer Co., 216 So 2d 586 (La App 1968); Cornell v. T. V. Development Corp., 17 NY2d 69, 267 NYS2d 29, 215 NE2d 349 (1966); Adolph Gottscho, Inc. v. American Marking Corp., 26 NJ 229, 139 A2d 281, 288, 67 ALR2d 816 (1958).

64 Or 421, 425, 126 P 611, 130 P 983; *Inverarity v. Stowell*, 10 Or 261, 265. And see *Bush v. Mitchell* [28 Or 92, 41 P 155 (1895)]. Conversely, in the absence of such close connection and mutual dependence, a party may take the benefit of a part of the decree and still retain his right to appeal, as was held in *State v. Wells, Fargo & Co.*, supra. This seems to be the law generally. * * *"

Clearly, a reversal of the trial court's decree denying the accounting for the second period and the claim for liquidated damages would not render necessary a reversal of the parts of the decree beneficial to appellants.

The defendant, however, relies on the cases of *Hofer v. Hofer*, supra, and *Gas-Ice Corporation v. Newbern*, 263 Or 227, 501 P2d 1288 (1972), in support of his proposition that an appellant's right to accept the benefits of the judgment or decree below and still appeal may be defeated by the filing of a cross-appeal which opens up the entire judgment or decree to review.

In *Hofer* the appellant was granted a decree of divorce. She appealed, apparently seeking a more favorable ruling with regard to alimony and property rights. Respondent moved to dismiss on the grounds that the appellant had accepted the benefits of the decree by accepting alimony checks. The court pointed out that the respondent had not cross appealed and thus the court was without power to issue a decree less favorable to the appellant than she received in the lower court. Thus the court held that she was entitled to accept the alimony payments and, at the same time, appeal to this court:

"The rule that the acceptance of benefits to which the appellant would be entitled in every view of the case, Sherman v. Sherman, [89 Or 130, 173 P 572 (1918)]; Annotation, 169 ALR 985, 1013, does

not constitute a waiver of the right of appeal, is not limited to cases in which there is an irrevocable admission of an amount due the party wishing to appeal. It applies also where the appellate court is without power to render a decision less favorable to the appellant." 244 Or at 93.

In *Gas-Ice Corp.* this court again denied a motion to dismiss based on acceptance of the benefits of a judgment. As in *Hofer,* the appellant appealed from those portions of the judgment unfavorable to him and there was no cross-appeal. The court held:

"In the present case, defendant did not cross-appeal. Therefore, on de novo review, this court may not render a judgment or decree more favorable to him and less favorable to plaintiff than was the decree entered below. *Hofer v. Hofer,* supra at 92. See also *Taylor v. Pearl, PicKell,* 244 Or 81, 86, 415 P2d 757 (1966). Thus, defendant would have remained liable for the amount of that judgment and decree, whatever the outcome of this appeal. It follows that plaintiff is entitled to retain the money it withdrew from the trial court as a result of that judgment, irrespective of the outcome of the present appeal, because on appeal this court may not require a result less favorable to it than the judgment of the trial court." 263 Or at 234.

The defendant contends that the plaintiffs' appeal should be dismissed because, unlike *Hofer* and *Gas-Ice,* the defendant has cross appealed and this court can therefore render a judgment less favorable to plaintiffs [the appellants] than the judgment entered in the trial court.

We do not believe that the plaintiffs' appeal should be dismissed because the defendant has cross appealed. If the defendant had not filed a cross-appeal, it is clear that the court could not have dis-

missed plaintiffs' appeal on the grounds that plaintiffs had accepted part of the benefits. The effect of a cross-appeal was not before the court in *Hofer* and *Gas-Ice,* and those cases should not be construed to defeat an otherwise valid appeal merely by the filing of a cross-appeal.

■ If a cross-appeal could prevent the original appellant from pursuing a valid appeal on the grounds the cross-appeal allows the appellate court to possibly reduce the award given the original appellant, the cross-appeal could be used as a vehicle to dismiss the original appeal. The losing party could pay part of the judgment, file what could amount to a completely spurious cross-appeal, and by doing so secure the dismissal of the original appeal.

The defendant's motion to dismiss plaintiffs' appeal is denied.

## ON THE MERITS

On June 17, 1969, the defendant signed a memorandum agreement with the Oregon State Council of Carpenters. Paragraph 1 of the agreement incorporated by reference the Carpenters Master Labor Agreement and the agreements establishing the Carpenters Pension, Health and Welfare, Apprenticeship and Training, and Vacation Savings Trust Funds. Paragraph 2 called for certain payments to be made by the employer to the funds. Paragraph 7, relating to notice of termination of the agreement, provided:

"7. This memorandum Agreement shall remain in full force and effect until May 31, 1971 and shall continue from year to year thereafter unless either party shall give written notice to the other of a desire to change or cancel it at least sixty days prior to May 31, 1971, or May 31 of any succeeding

year. The Employer and the Unions shall be bound by any renewals or extensions of the Master Agreement and the Trust Agreements, or any new agreements, unless an appropriate written notice is given to the other party at least sixty days prior to May 31, 1971, or any subsequent year of their intent not to be bound by any new, renewed or extended agreement."

Each of the trust fund agreements had a provision for liquidated damages of 10 per cent of the amount of contributions due.

The defendant made no payments to the trust funds. On May 7, 1971, the trustees requested an audit of the defendant's payroll records. This request was denied. On July 7, 1971, the accounting firm employed by the trustees to make the audit notified the trustees by letter:

"You have asked that we perform a payroll audit on Bliss Roofing Company, Milwaukie, Oregon. Mr. Bliss has asked that we provide him a copy of the agreement that he signed, which we have done. He has stated that he believed that he was joining the union as an individual and not as an employer. Mr. Bliss indicated to us that he is turning the matter over to his attorney."

On September 20, 1971, the trustees filed suits in equity for an accounting.

The trial court limited the plaintiffs to an accounting from the date of the making of the contract through May 31, 1972, rather than to the date of the trial. This ruling was predicated on two factors: first, that the defendant's action in refusing an audit and the above letter from the accounting firm to the plaintiffs constituted notice of termination to the union; and second, that the defendant's pleadings in the instant case also constituted notice of termination to the

union. Plaintiffs contend that neither constituted the required notice.

■ As this case deals with the administration and interpretation of labor agreements, federal law governs. *Textile Workers Union v. Lincoln Mills,* 353 US 448, 77 S Ct 912, 1 L Ed 2d 972 (1957).

The Federal Code, 29 U.S.C.A. § 158(d) (1965), provides in relevant part:

> "* * * *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

> "(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification; * * *."

See also ORS 663.165(1)(a).

■ It is clear that the defendant's refusal to permit an audit and the letter from the accounting firm to the plaintiffs informing them that there were problems with the agreement did not constitute proper notice of termination of the agreement. Both the agreement in the instant case and 29 U.S.C.A. § 158(d) require that the notice of termination be written and be served by the party terminating (defendant) on the other party to the collective bargaining agreement (the union). Defendant's oral statements to the accounting firm are obviously not notice. Likewise, the letter from the accounting firm (not a party to the

agreement) to the trustees (not parties to the agreement)[2] containing hearsay statements that there were problems with the agreement did not constitute notice. For cases dealing with termination and automatic renewal provisions in collective bargaining agreements, *see* Annot. 17 ALR2d 754 (1951). *See also N.L.R.B. v. Vapor Recovery Systems Company,* 311 F2d 782 (9th Cir 1962).

■ Defendant's answer in the instant case is also insufficient notice of termination. Defendant alleged in his answer that the plaintiffs are barred by laches and that the contract is voidable or subject to reformation due to misrepresentation. In *Teamsters Loc. Un. 745, Etc., v. Braswell Mot. Frt. L. Inc.,* 428 F2d 1371, 1374 (5th Cir 1970), the court dealt with a similar contention:

> "* * * [The defendant] contends that its original answer and other written documents filed during the course of this litigation consistently showed that it 'desired to cancel or terminate the agreement' and was sufficient notice for such purpose under Article 37, § 1 of the agreement.
>
> "In our view it does not necessarily follow that a denial of the existence of the agreement is the same as cancelling an existing agreement. There was no cancellation until April 23, 1969 and then [the defendant] had no trouble in giving notice of cancellation while, at the same time, preserving its position that the agreement did not exist."

It is significant to note that the court in *Braswell*

---

[2] It is true, as defendant asserts, that officials of the union were also trustees of the various trusts and that there was a handwritten notation at the bottom of the letter that a copy was sent to one of these officials. Due to the insufficiency of the letter as notice of termination, we do not reach the question of whether this was sufficient evidence that the union received notice of the contents of the letter.

was dealing with a termination clause identical in all material respects to the clause in the instant case. We hold that the memorandum agreement and 29 U.S.C.A. § 158(d) contemplated a more specific notice of termination than could be implied through the defendant's answer.

The plaintiffs were entitled to an audit and accounting for the amounts found owing from the date of the contract to the date of trial.

■ The plaintiffs also contend that the court erred in refusing to award liquidated damages of 10 per cent of the amounts found due by the audit. At the trial a trust officer from the United States National Bank, administrator of the trusts, testified that nonpayment or late payment required a great deal of extra handwork to enter the information on the computer. There was also testimony that reports were required to be made up to notify the union and the employer of the nonpayment. Finally, there was testimony that an employee of one of the trusts was required to investigate the failure to make payments. The trust officer stated that the exact cost to the trusts was unknown. Also, we note that failure to make the required payments would undoubtedly mean a loss of interest to the funds.

In *Weber v. Anspach,* 256 Or 479, 473 P2d 1011 (1970), this court upheld an award of liquidated damages under the same provisions of several of the same trust funds. We can see no distinction between the instant case and *Weber v. Anspach,* supra. In that case we held:

"If at the time of making the contract the sum provided bears any reasonable relationship to the anticipated damages and the actual damages are

difficult or impossible of ascertainment, the sum provided will normally be considered liquidated damages. *Medak v. Hekimian,* 241 Or 38, 404 P2d 203 (1965)." 256 Or at 483.

In the instant case it was error for the court to refuse to grant liquidated damages to the plaintiffs.

The defendant cross appeals, alleging that the court erred in denying his defenses of laches and misrepresentation, and in allowing plaintiffs an accounting. We review the evidence de novo.

■ With regard to the defense of laches, defendant alleges that the plaintiffs failed to send notice or demand for payment during the time between the execution of the contract and the filing of the complaint. Defendant testified that, until the filing of the suit, he did not know that he was bound as an employer. He thought he was joining the union as an individual and the union failed to inform him otherwise.

Defendant's defense of laches was effectively rebutted by the plaintiffs. Plaintiffs introduced a certified letter addressed to Bliss Roofing Co. and received by Mrs. Bliss which requested defendant to appear at a union meeting to explain why he had failed to comply with the area Carpenters Labor Agreement. This letter was sent three months after Bliss signed the memorandum agreement. Plaintiffs introduced minutes of the meeting indicating that defendant appeared and "agreed to cooperate and pay monies owed." Earl Kirkland, a union official, testified that Bliss did not indicate that there was anything irregular with the contract and that Bliss agreed to pay for the benefit of his employees.

With regard to the defense of misrepresentation, there was a conflict in the testimony. Bliss testified that the union officials led him to believe that the contract he was signing was for individual union membership only. The union officials testified they explained to Bliss that he was signing the contract in question as an employer. Reference to the contract itself tends to support the position of the trustees. At the bottom of the contract in boldface letters is the word "EMPLOYER:". Below that the defendant printed "Bliss Roofing Co.". At the bottom line is the defendant's signature.

The defendant does not contend that he did not sign the contracts in question. Rather, he contends that he did not read them and was unaware of their contents. Ordinarily, failure to read a contract is not a defense to its enforcement. *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 487 P2d 80 (1971); *Shell Oil Co. v. Boyer*, 234 Or 270, 381 P2d 494 (1963).

Further, the defendant was informed less than three months after he signed the contract that he was bound as an employer. Yet he did not attempt to rescind the contract at that time. If a party desires to rescind a contract on the grounds of misrepresentation, he must act promptly. *Karn et ux v. Pidcock et ux*, 225 Or 406, 357 P2d 509 (1961); *Scott v. Walton*, 32 Or 460, 52 P 180 (1898).

After a de novo review of the evidence, we agree with the trial court that the defenses of laches and misrepresentation were not established.

Reversed and remanded for further proceedings consistent herewith.